**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MEDISO MEDICAL EQUIPMENT DEVELOPING SERVICES, LTD, | |
| Petitioner, | Civil Action No. 14-1440 (BAH) |
| v. | Judge Beryl A. Howell |
| BIOSCAN, INC., | |
| Respondent. | |

**MEMORANDUM OPINION**

This case arises out of Mediso Medical Equipment Developing and Services, Ltd.'s petition to confirm an arbitration award issued by the Arbitration Court Attached to the Hungarian Chamber of Commerce and Industry ("Arbitration Court"). Currently before the Court is the Petitioner's Motion for Entry of Default Judgment, ECF No. 11. For the reasons set forth below, the petitioner's motion is granted.

**I.    BACKGROUND**

The petitioner and the respondent, Bioscan, Inc., entered into a Collaboration and Original Equipment Manufacturer Agreement ("Agreement") on March 17, 2005 in which they "agreed to cooperate in developing a new SPECT and SPECT/CT system, which were to be sold by the Respondent in the multi-pinhole small animal SPECT imaging market." Pet. Confirm Arbitration Award ("Petition"), at ¶ 6, ECF No. 1. The parties also entered into a Memorandum of Understanding ("MOU")" in which the petitioner appointed the respondent as its exclusive distributor over a number of its products. *Id.* The Agreement contained an arbitration provision, which stated: "Any dispute arising from or in connection with this [Agreement] and the MOU

1

and their consummation shall be settled by the Court of Arbitration attached to the Hungarian Chamber of Commerce and Industry . . . ." *Id.* at ¶ 8.

The petitioner claims that the respondent breached the Agreement and the MOU by "fail[ing] to fulfill payment obligations . . . , fail[ing] to meet the minimum purchase quota and fail[ing] to fulfill payment obligations related to the invoices issued by the [Petitioner.]" Award of the Arbitration Court Attached to the Hungarian Chamber of Commerce and Industry ("Arbitral Award") ¶ 7, ECF No. 1-4.  The petitioner presented its claim to the Arbitration Court but, rather than defend against the action in arbitration, the respondent notified the Arbitration Court of its formal dissolution as of October 17, 2013 and "decline[d] to participate in the oral hearings." *Id.* at ¶ 13.  Nevertheless, the Arbitration Court ordered the respondent to "pay the amounts as claimed" by the petitioner. *Id.* at ¶ 39(a).  Accordingly, the Arbitration Court awarded the following itemized amounts to the petitioner:

|   | **Award in U.S. Dollars**[1] | **Post-Judgment Interest** |
|---|---|---|
| 1 | $ 46.00 | -- |
| 2 | $ 915,596.42 | 5% per annum from August 22, 2012 until payment |
| 3 | $ 1,316,115.70 | 5% per annum from July 1, 2012 until payment |
| 4 | $ 658,057.85 | 5% per annum from August 10, 2012 until payment |
| 5 | $ 1,022,100.00 | 5% per annum from August 10, 2012 until payment |
| 6 | $ 76,708.78 | -- |
| 7 | $ 72,243.80 | -- |

---

[1] The Arbitration Award was issued in U.S. Dollars (Award 1, 5, and 8), Euros (Award 2, 3, 4, and 7), and Hungarian Forint (Award 6).  The amounts in the chart, and in this Court's Order, reflect conversion to U.S. Dollars as of the date of the Arbitral Award, using the applicable exchange rate as published by the U.S. Department of Treasury for the preceding quarter.  *See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 162 (D.D.C. 2013).

| | | |
|---|---|---|
| 8 | $ 25,554.00 | -- |

The Petitioner subsequently filed this action seeking to confirm the Arbitral Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention") and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207 (2012). *See* Mem. Supp. Pet'r's Mot. Default J. ("Pet'r's Mem.") at 2–3, ECF No. 11-1.

The respondent was a company based in, organized, and existing under the laws of the District of Columbia with its place of business located at 4590 MacArthur Boulevard, N.W., Washington, D.C. 20007.  *See* Petition ¶ 4.  Thus, this Court may exercise personal jurisdiction over the respondent.  Although the respondent is apparently now dissolved, a case may proceed against a dissolved company.  *See* D.C. Code § 29-312.05(b)(5) ("Dissolution of a corporation shall not . . . prevent commencement of a proceeding by or against the corporation in its corporate name."); FED. R. CIV. P. 17(b).  The respondent was properly served in this proceeding, [2] but nevertheless has failed to enter an appearance, file any responsive pleadings, or seek or receive any extension of time for filing responsive pleadings. The Clerk of this Court entered a default against the respondent on October 21, 2014.  *See* Default, ECF No. 10.  The petitioner thereafter filed its motion for entry of a default judgment.

---

[2] Since the respondent no longer maintains a registered agent, D.C. Code § 29-104.12(d) permits service to be made upon the Mayor.  *See* D.C. Code § 29-104.12(d) ("If an entity fails to designate or maintain a registered agent in the District as required by law, or if an entity's registered agent in the District cannot with reasonable diligence be found, and if the person seeking service submits a declaration under penalty of making false statements showing that a registered agent for the entity cannot be found, the Mayor shall be an agent of the entity upon whom any process against the entity may be served . . . ."); *see also* FED. R. CIV. P. 4(e)(1), (h).  The petitioner served the Mayor's designee in accordance with this provision.  *See* Aff. of Service, ECF No. 6; *see also* Declaration of Akin Alcitepe, ECF No. 7-1.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). "Rule 55 sets forth a two-step process for a party seeking a default judgment: entry of a default, followed by entry of a default judgment." *Swiss Inst. of Bioinformatics v. Global Initiative on Sharing all Influenza Data*, No. 13-cv-1274, 2014 WL 2810500, at *2 (D.D.C. June 23, 2014). The Court "strongly favor[s] resolution of disputes on their merits, but default judgment is available when the adversary process has been halted because of an essentially unresponsive party." *Cumis Ins. Society, Inc. v. Billups*, No. 10–1478, 2010 WL 4384228, at *2 (D.D.C. Nov. 4, 2010) (internal quotations omitted); *see also Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) ("The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." (citation and quotation marks omitted)).

Default judgment is appropriate if defendants are "'totally unresponsive'" and the failure to respond is "plainly willful, as reflected by [the party's] failure to respond 'either to the summons and complaint, the entry of default, or the motion for default judgment.'" *Dist. of Columbia v. Butler*, 713 F. Supp. 2d 61, 64 (D.D.C. 2010) (quoting *Gutierrez v. Berg Contracting Inc.*, No. 99–3044, 2000 WL 331721, at *1 (D.D.C. March 20, 2000)). When there is an "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Int'l Painters and Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F.Supp.2d 56, 57 (D.D.C. 2008) (internal quotations omitted).

## III. DISCUSSION

The petitioner argues that the New York Convention requires this Court to confirm the Arbitral Award issued in this case. Pet'r's Mem. at 2. The respondent has yet to make an appearance and has not responded to the summons, the petition, or the entry of default. As a result, the Clerk has entered a default and the petitioner has moved this court to enter a judgment of default. The Court will first address the requirements for the confirmation of the Arbitral Award and then whether the petitioner should receive interest on the Arbitral Award.

### A. Confirmation of the Arbitral Award Is Warranted

The FAA codifies the New York Convention, a multilateral treaty addressing "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought . . . ." New York Convention, Art. I. The FAA authorizes the recipient of a foreign arbitral award to seek enforcement in a federal district court within three years of the arbitral award. 9 U.S.C. § 207. Under the FAA, a federal district court "*shall* confirm" an arbitral award that falls under the New York Convention "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* (emphasis added).

"Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution,' . . . the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards . . . ." *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). The New York Convention permits courts to set aside the arbitral award only where the party opposing the award's enforcement submits "proof" to the court that the award or underlying agreement were in certain respects improper, or where the court finds that the dispute

was not subject to arbitration or that enforcement would otherwise violate public policy. New York Convention, Art. V.[3] Upon this record, there are no grounds for refusing to enforce the Arbitral Award. First, the respondent has failed to make an appearance and has therefore provided no "proof" or other evidence to the Court on why the arbitral award should not be enforced. Second, the underlying dispute is a typical commercial dispute appropriate for arbitration and its enforcement does not violate public policy. As such, there are no grounds before the Court to justify a departure from the FAA's strict enforcement requirements.

---

[3] Specifically, Article V of the New York Convention sets forth the following grounds by which a district court may refuse to enforce a foreign arbitral award:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
>
> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
>
> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country;
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, Art. V, ¶¶ 1-2.

B.     **Post-Judgment Interest Is Appropriate**

The petitioner additionally requests post-judgment interest on those portions of the Arbitral Award not currently subject to post-judgment interest. Pet'r's Mem. at 6.[4] Although the FAA provides no specific guidance regarding post-judgment interest, in general post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. *See Swiss Inst.*, 2014 WL 2810500, at *5 (awarding post-judgment interest following default in petition to confirm arbitration award). Accordingly, courts have ordered post-judgment interest in civil judgments confirming foreign arbitral awards. *See, e.g.*, *id.*; *Global Distressed Alpha Fund I LP v. Red Sea Flour Mills Co. Ltd.*, 725 F. Supp. 2d 198, 203 (D.D.C. 2010); *see also Tricon Energy, Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013) ("A judgment confirming an arbitration award—like any other civil judgment—is subject to § 1961."). This Court agrees with the conclusion reached by these courts and finds that awarding post-judgment interest is appropriate and that the petitioner is entitled to post-judgment interest on those amounts not currently receiving post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant the petitioner's motion for entry of default judgment. The respondent shall pay petitioner as follows: $915,596.42 plus post-judgment interest at the rate of 5% per annum from August 22, 2012 until payment; $1,316,115.70 plus post-judgment interest at the rate of 5% per annum from July 1, 2012 until payment; $658.057.85

---

[4] According to the petitioner, as of November 3, 2014, the amount owed to the petitioner on the portions of the Arbitral Award including post-judgment interest totaled $4,354,316.85. This amount includes the original amounts subject to post-judgment interest plus 5% per annum interest calculated from the dates established in the Arbitral Award until November 3, 2014. In addition, the amount owed to the petitioner on the portions of the Arbitral Award for which the Arbitration Court did not award post-judgment interest totaled $174,552.58. It is on this second portion—the amount not previously subject to post-judgment interest—that the petitioner now seeks post-judgment interest at the rate established by 28 U.S.C. § 1961.

plus post-judgment interest at the rate of 5% per annum from August 10, 2012 until payment; $1,022,100 plus post-judgment interest at the rate of 5% per annum from August10, 2012 until payment.  In addition, the respondent shall pay the petitioner $174,552.58 plus post-judgment interest at the statutory rate provided by 28 U.S.C. § 1961 from the date of this Judgment until payment is made in full.

      An appropriate Order accompanies this Memorandum Opinion.

      Date: December 11, 2014

      _____
      BERYL A. HOWELL
      United States District Judge